## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

In Re:                                              Bankruptcy No. 16-30199

Douglas L. Johnson,                                 Chapter 11
a/k/a Doug Johnson,

                    Debtor.
_____/

Portal Investments, LLC,

                    Plaintiff,

          v.                                        Adversary No. 16-07020

Douglas L. Johnson,

                    Defendant.
_____/

## ORDER GRANTING SUMMARY JUDGMENT

        Plaintiff Portal Investments, LLC, filed a Complaint seeking a determination that

Defendant/Debtor Douglas L. Johnson's debts to it are excepted from discharge under

sections 523(a)(2), (4) and (6) of the Bankruptcy Code.  Doc. 1.  Debtor denies the

allegations.  Doc. 7.

        Portal Investments filed a Motion for Summary Judgment on October 31, 2017.

Doc. 26.  In support of its motion, Portal Investments offered a number of documents

related to a JAMS Arbitration Case,[1] including a Corrected Final Order and Award dated

October 12, 2017.  Doc. 28, exhibits 1-5.  Portal Investments asserts the findings and

conclusions included in the Corrected Final Order and Award collaterally estop Debtor

from litigating the issues determined in the arbitration in this bankruptcy adversary

_____

        [1] These proceedings included JAMS Arbitration Case Numbers 16372 and
17751.

1

proceeding. Doc. 27. Debtor resists the motion, but does not dispute the authenticity or admissibility of the Corrected Final Order and Award. Doc. 32. Rather, Debtor argues that whether the arbitrator's findings of fact support a finding of nondischargeability in bankruptcy is a question that was not addressed in the arbitration. Consequently, Debtor maintains that whether his debt to Portal Investments is excepted from discharge has not been "actually and necessarily" decided and therefore litigation of this issue is not precluded by collateral estoppel. Id. at 4. Debtor also argues summary judgment is inappropriate because questions of fact remain regarding the sum of damages attributable to Portal Investments' nondisclosure claim as compared to its breach of fiduciary duty claim. Id. at 5-6. He maintains that if the Court finds the debt he owes to Portal Investments excepted from discharge under only one theory of liability, it would be impossible for the Court to allocate the award between the two causes of action and determine exactly what portion is nondischargeable. Id.

For the reasons stated below, the Court concludes that Portal Investments met its burden of showing that Debtor is collaterally estopped from relitigating the issues actually and necessarily decided in the arbitration proceedings and that the arbitrator's findings satisfy the elements of Portal Investments' section 523(a)(2)(A) cause of action. Portal Investments' Motion for Summary Judgment is GRANTED.

## I.    FACTS

The interim orders and Corrected Final Order and Award entered by the arbitrator provide the factual background for this opinion. The orders are incorporated by reference. See Docs. 28-1, 28-2, 28-3, 28-4.

## II.    ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts and drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180 (8th Cir. 2008); see Fed. R. Civ. P. 56(a) made applicable by Fed. R. Bankr. P. 7056.  The initial burden is on the movant to establish the lack of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue'" of fact making trial necessary.  Id. at 324 (citing Fed. R. Civ. P. 56).  The existence of some factual dispute will not overcome an otherwise properly supported summary judgment motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986).  "If the evidence is merely colorable or not significantly probative, summary judgment may be granted."  Id. at 249-50.

### B.    Collateral Estoppel

Collateral estoppel, also known as issue preclusion, is a legal doctrine that bars the relitigation of factual or legal issues that were determined in a prior court action. Osborne v. Stage (In re Stage), 321 B.R. 486, 491 (B.A.P. 8th Cir. 2005) (citing Johnson v. Miera (In re Miera), 926 F.2d 741, 743 (8th Cir. 1991)).  Portal Investments and Debtor litigated fraudulent nondisclosure and breach of fiduciary duty issues in the previous arbitration proceedings.  The Corrected Final Order and Award was not

confirmed by either a state or federal court.  Nevertheless, Portal Investments asks the Court to give collateral estoppel effect to the arbitration orders.

In <u>McDonald v. City of West Branch</u>, the United States Supreme Court determined that arbitration is not a "judicial proceeding" and ruled that arbitration proceedings are not entitled to full faith and credit under 28 U.S.C. § 1738.  466 U.S. 284, 287-88 (1984).  Accordingly, it found that federal courts were not required by statute to give collateral estoppel effect to an unappealed arbitration award.  <u>Id.</u> at 288. The Court observed that any rule precluding relitigation of issues decided in arbitration proceedings "would necessarily be judicially fashioned."  <u>Id.</u>  The Court then considered whether to grant preclusive effect to arbitration awards brought pursuant to a collective bargaining agreement in a 42 U.S.C. § 1983 action.  <u>Id.</u> at 292.  It declined to do so.  <u>Id.</u>

A short time after <u>McDonald</u>, the Supreme Court reversed a lower court decision declining to compel arbitration.  <u>See</u> <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213 (1985).  It held that "the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."  <u>Id.</u> at 217.  In <u>Byrd</u>, the Court addressed a concern regarding the preclusive effect of arbitration proceedings.  The Court noted:

> Significantly, <u>McDonald</u> also establishes that courts may directly and effectively protect federal interests by determining the preclusive effect to be given to an arbitration proceeding. Since preclusion doctrine comfortably plays this role, it follows that neither a stay of the arbitration proceedings, nor a refusal to compel arbitration of state claims, is *required* in order to assure that a precedent arbitration does not impede a subsequent federal-court action. . . .
>
> * * *
>
> . . . Suffice it to say that in framing preclusion rules in this context, courts shall take into account the federal interests warranting protection. As a

4

result, there is no reason to require that district courts decline to compel arbitration, or manipulate the ordering of the resulting bifurcated proceedings, simply to avoid an infringement of federal interests.

Id. at 223 (emphasis in original).  Since McDonald and Byrd, federal courts have routinely exercised their discretion to give preclusive effect to arbitration decisions where there were no federal interests or the federal interests did not rise to a level warranting protection, and the elements of collateral estoppel were met.  See, e.g., Cook v. Knight (In re Knight), 574 B.R. 800, 809 (Bankr. N.D. Ga. 2017); Ferris v. Rhodes (In re Rhodes), 2008 WL 4876765, at *2-5 (Bankr. W.D. Mo. 2008); Graybar Elec. Co., Inc. v. Fed. Ins. Co., 567 F. Supp. 2d 1116, 1125 (E.D. Mo. Nov.12, 2008); Stulberg v. Intermedics Orthopedics, Inc., 997 F.Supp. 1060, 1065-70 (N.D. Ill. 1998); Swanson v. Tam (In re Tam), 136 B.R. 281, 285 (Bankr. D. Kan. 1992).

The federal interest at issue in this case is the discharge of Debtor's debts.  In Grogan v. Garner, the United States Supreme Court ruled that collateral estoppel may be applied to establish the factual basis for an exception to discharge under section 523(a) of the Bankruptcy Code.  Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991); see also Roussel v. Clear Sky Props., LLC, 829 F.3d 1043, 1047 (8th Cir. 2016).  Since Grogan, many courts have applied collateral estoppel principles, granting preclusive effect to judicial proceedings and arbitration awards in subsequent bankruptcy litigation regarding exceptions to discharge.  See, e.g., Roussel v. Clear Sky Props., LLC, 829 F.3d at 1047 (judicial proceeding); Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 830 (B.A.P. 9th Cir. 2006) (arbitration); PLM Lake & Land Mgmt. Corp. v. Duy (In re Duy), 484 B.R. 742, 759 (Bankr. D. Minn. 2012) (judicial proceeding); Caruso v. Harmon (In re Harmon), 404 B.R. 521, 531 (Bankr. W.D. Mo. 2009) (judicial proceeding).  Courts

frequently apply collateral estoppel, even in the absence of confirmation of the arbitration award.[2]  See Val-U Constr. Co. of S.D. v. Rosebud Sioux Tribe, 146 F.3d 573, 582 (8th Cir. 1998); Wellons, Inc. v. T.E. Ibberson Co., 869 F.2d 1166, 1169 (8th Cir. 1989).  While Debtor's interest in a discharge and the resulting fresh start is significant, this interest does not rise to a level warranting protection from the principles of collateral estoppel.  See In re Rhodes, 2008 WL 4876765, at *2; In re Tam, 136 B.R. at 285.

Having found that the federal interest at issue in this case does not warrant protection, the next issue is whether Portal Investments met its burden of showing the elements of collateral estoppel.  The party asserting collateral estoppel has the burden of proving the following elements:

> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit;
> (2) the issue sought to be precluded must be the same as the issue involved in the prior action;
> (3) the issue sought to be precluded must have been actually litigated in the prior action;
> (4) the issue sought to be precluded must have been determined by a valid and final judgment; and
> (5) the determination in the prior action must have been essential to the prior judgment.

Sells v. Porter (In re Porter), 539 F.3d 889, 894 (8th Cir. 2008) (quoting Robinette v. Jones, 476 F.3d 585, 589 (8th Cir. 2007)); see also In re Miera, 926 F.2d at 743 (citation omitted).[3]  When analyzing whether collateral estoppel applies, courts consider

---

[2] The arbitration order and award in this case has not been confirmed.  Debtor does not challenge its validity on that basis.

[3] Both Portal Investments and Debtor cited cases applying the federal common law elements of collateral estoppel.  See Doc. 27 at 13 (citing Kaler v. Kana (In re Kana), 478 B.R. 373, 379-80 (Bankr. D.N.D. 2012)); Doc. 32 at 3 (citing United States v. Olson (In re Olson), 170 B.R. 161, 166 (Bankr. D.N.D. 1994)).  In this case, the arbitration Corrected Final Order and Award was not confirmed by a state court.

whether the party against whom collateral estoppel is asserted received a "full and fair" opportunity to litigate the issue in the prior adjudication.  In re Miera, 926 F.2d at 743 (citing Lovell v. Mixon, 719 F.2d 1373, 1376 (8th Cir. 1983)).  "The purpose of collateral estoppel is not to foreclose a party of its right to put contested facts before the Court, but is to prevent their submission twice."  In re Yagow, 62 B.R. 73, 78 (Bankr. D.N.D. 1986) (citation omitted).

    In its Brief in Support of Motion for Summary Judgment, Portal Investments argues that Debtor is collaterally estopped from relitigating issues in this adversary proceeding because an arbitrator determined the factual and legal issues relevant to its bankruptcy claims.  Specifically, it argues that the arbitrator made findings of fact sufficient to satisfy its fraud claims and that the issues adjudicated in the arbitration proceedings were identical to those at issue under sections 523(a)(2)(A), (a)(4) and (a)(6).  Portal Investments also argues that it satisfied the remaining elements of collateral estoppel by showing that the parties were the same, the parties actually litigated their disputes, the arbitrator entered a final judgment, and the findings of fact that proved the elements of its nondisclosure and breach of fiduciary duty claims in the arbitration (as well as the elements of its section 523 causes of action) were essential to

---

Therefore, the Court finds application of the federal common law of collateral estoppel appropriate.  See W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc., 765 F.3d 625, 629 (6th Cir. 2014) ("Here, the record contains no indication that the arbitration award was confirmed or otherwise reviewed by a Michigan court, so the Full Faith and Credit Act does not require our court to consult Michigan preclusion law."); Ferris v. Rhodes (In re Rhodes), 2008 WL 4876765, *2 (Bankr. W.D. Mo. Nov. 12, 2008) (concluding that federal common law principles govern whether collateral estoppel applies in a case when an arbitration award has not been confirmed by a state court).  Even if state law controlled preclusion principles, the analysis in this case would not change because the elements of collateral estoppel under Colorado law are similar to those under federal law.  See Stanton v. Schultz, 222 P.3d 303, 307 (Colo. 2010).

the arbitration ruling.   In support of these arguments, Portal Investments included a Statement of Established Facts in its brief (Doc. 27) and offered the arbitrator's interim orders, Final Order and Award and Corrected Final Order and Award as exhibits.   Docs. 28-2 through 28-5.

In his response, Debtor does not challenge the authenticity or admissibility of the arbitrator's orders.   Instead, he argues that the ultimate question at issue in this adversary proceeding—whether the findings of fact support a conclusion that the arbitration award is excepted from discharge in bankruptcy—has not been "actually and necessarily litigated," an essential element of collateral estoppel.   Doc. 32 at 4. Specifically, Debtor asserts "whether the underlying facts of the [fraudulent nondisclosure and breach of fiduciary duty] elements above support a finding of nondischargeability in bankruptcy was not addressed in the arbitration."  Doc. 32 at 4.

Contrary to Debtor's assertion, the doctrine of collateral estoppel may preclude relitigation of issues decided in arbitration proceedings even if the arbitrator did not decide bankruptcy discharge issues.  B&B Hardware, Inc., v. Hargis Indus., Inc., 135 S. Ct. 1293, 1306 (2016) (noting that issue preclusion may apply even if the issue sought to be precluded was governed by a different statutory provision in the first proceeding). "Often a single standard is placed in different statues; that does not foreclose issue preclusion."  Id. (citing Smith v. Bayer Corp., 564 U.S. 299 (2011)).  Thus, the question is not whether the arbitrator decided whether Debtor is entitled to a bankruptcy discharge; it is whether the arbitrator considered the same material factual issues and legal standards in deciding the fraudulent nondisclosure and breach of fiduciary duty

causes of action as this Court considers in deciding whether Portal Investments met the elements of its section 523 claims. See id. at 1307.

Debtor also argues summary judgment is inappropriate because questions of fact remain regarding the amount of damages attributable to Debtor's liability for fraudulent nondisclosure and breach of fiduciary duty, respectively. Debtor urges the Court to assess the dischargeability of the specific debt arising from each theory of liability.

Given that Portal Investments' motion is premised on the arbitrator's fact findings and legal conclusions, this Court will determine whether the interim orders together with the Corrected Final Order and Award should be granted preclusive effect and whether the arbitrator's determinations satisfy the elements of Portal Investments' section 523 causes of action. Finally, it will analyze the arbitrator's damage assessment to determine whether all or part of Debtor's debt to Portal Investments is dischargeable. These questions are appropriately addressed in the context of a summary judgment motion. Olson v. United States (In re Olson), 170 B.R. 161, 165 (Bankr. D.N.D. 1994) ("Summary judgment is an appropriate mechanism for deciding whether a prior determination by a court of competent jurisdiction should be given collateral estoppel effect in a nondischargeability action.").

### 1. Debtor was a party to the arbitration.

First, Portal Investments must show that Debtor, the party against whom estoppel is asserted, was a party to (or in privity with) a party to the prior adjudication. See In re Porter, 539 F.3d at 894. Both Debtor and Portal Investments were parties to the JAMS arbitration. Therefore, Portal Investments established the first element of collateral estoppel.

>    **2.    The issues actually litigated and necessarily adjudicated in the arbitration are the same as the factual issues raised in Portal Investments' section 523(a)(2)(A) cause of action.**

In this case, the second, third and fifth elements are most easily addressed together.  The second element is whether the issues litigated in the arbitration are identical to the factual issues and claims in this adversary proceeding.  In analyzing this element, the Court considers whether the issues addressed in the arbitration involved the same controlling or material facts and applicable legal standards as Portal Investments' section 523(a)(2)(A) cause of action.  See B & B Hardware, Inc., 135 S. Ct. at 1306 (issue preclusion applies where "the issues in the two cases are indeed identical and the other rules of collateral estoppel are carefully observed.") (citation omitted); Turner v. U.S. Dep't of Justice, 815 F.3d 1108, 1111-12 (8th Cir. 2016) (precluding a party from relitigating subject matter jurisdiction even though there were some factual differences between the first and second proceedings because these differences did not affect the common question and the factfinders relied on the same basis for subject matter jurisdiction); In re Porter, 539 F.3d at 894 (finding that defendant/debtor was collaterally estopped from relitigating facts determined by a jury in a sexual harassment case in a subsequent bankruptcy adversary case alleging his conduct was willful and malicious under section 523(a)(6) of the Bankruptcy Code).

In analyzing the third element (the issue was litigated) and the fifth element (the prior determination was essential to the judgment), the Court must consider the issues actually litigated and essential to the holding, not what might have been litigated and determined.  In re DEF Inv., Inc., 186 B.R. 671, 685 (Bankr. D. Minn. 1995); In re Miller, 153 B.R. 269, 274 (Bankr. D. Minn. 1993). This typically requires a court to examine the entire record of the earlier proceeding.  In re Miera, 926 F.2d at 743.

In Phase I of the arbitration, the arbitrator found Debtor liable for fraudulent nondisclosure under Colorado law.  Doc. 28-3, ¶ 51.  This cause of action required Portal Investments to prove, by a preponderance of the evidence, that: (1) Debtor failed to disclose a past or present fact that he had a duty to disclose; (2) the fact was material; (3) Debtor acted with the intent to induce Portal Investments to take a course of action it would not have otherwise taken; and (4) Portal Investments justifiably relied on the omission, resulting in damages.  See Wisehart v. Zions Bancorporation, 49 P.3d 1200, 1204 (Colo. App. 2002).

Section 523(a)(2)(A) provides that the Bankruptcy Code does not discharge a debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.  11 U.S.C. § 523(a)(2)(A).  To succeed, Portal Investments must prove each of the following elements by a preponderance of the evidence: (1) Debtor made a representation, (2) with knowledge of its falsity, (3) deliberately for the purpose of deceiving Portal Investments, (4) who justifiably relied on the representation, which (5) proximately caused Portal Investments damage.  See Heide v. Juve (In re Juve), 761 F.3d 847, 851 (8th Cir. 2014) (citing Treadwell v. Glenstone Lodge, Inc. (In re Treadwell), 637 F.3d 855, 860 (8th Cir. 2011)); Hasley v. Irons (In re Irons), 2017 WL 943897, at *2 (Bankr. D. Neb. Mar. 9, 2017).  Withholding material information is a form of false representation under section 523(a)(2)(A).  In re Juve, 761 F.3d at 851; In re Stark, 408 B.R. 831, 837 (Bankr. D.N.D. 2009).

11

The elements of Portal Investments' fraudulent nondisclosure claim in the arbitration proceedings are the same as its section 523(a)(2)(A) claim and require the arbitrator and this Court to consider the identical factual issues. Both causes of action require proof of material nondisclosure of facts with intent to deceive, justifiable reliance and damages proximately caused by the nondisclosure. These are the issues that were actually litigated and decided in the arbitration proceedings. They are the same facts this Court must consider in deciding whether to deny discharge of Debtor's debt to Portal Investments. The arbitrator's determinations on the issues of materiality, nondisclosure, intent and reliance were necessary to finding Debtor liable for fraudulent nondisclosure and awarding Portal Investments damages in the arbitration proceedings. In addition, Portal Investments is held to the same legal standard of proof— preponderance of the evidence—in both proceedings. After reviewing the interim orders and Corrected Final Order and Award, the Court finds that Portal Investments satisfied the second, third and fifth elements of collateral estoppel.

> **3.    The arbitrator's Corrected Final Order and Award is a valid and final "judgment" of Portal Investments' claims against Debtor.**

The fourth element of collateral estoppel under federal law requires a valid and final judgment in a previous proceeding. In re Porter, 539 F.3d at 894. Arbitration awards may be considered final judgments for the purposes of collateral estoppel, even if unconfirmed. Val-U Constr. Co. of S.D., 146 F.3d at 581; Wellons, 869 F.2d at 1168.

The Settlement Agreement finalized on February 14, 2014, provides that "any dispute with respect to . . . this Agreement will be resolved through expedited binding arbitration under the auspices and through the procedures of JAMS." Doc. 28-3, ¶ 5 (citing ¶ 5.8 of the Settlement Agreement). Debtor did not dispute the applicability of

12

this provision or his obligation to arbitrate using JAMS procedures.  The arbitrator

published the Corrected Final Order and Award, "constitut[ing] the Final Award in this

matter," on October 12, 2017.[4]  JAMS Rule 24(k) governs the finality of the Final Order

and Award.  Rule 24(k) provides:

> The award is considered final, for purposes of either the Optional
> Arbitration Appeal Procedure pursuant to Rule 34 or a judicial proceeding
> to enforce, modify or vacate the Award pursuant to Rule 25, fourteen (14)
> calendar days after service is deemed effective if no request for a
> correction is made, or as of the effective date of service of a corrected
> award.

JAMS, JAMS Comprehensive Arbitration Rules & Procedures (effective July 1, 2014),

https://www.jamsadr.com/rules-comprehensive-arbitration/ (last visited Jan. 8, 2017).

JAMS Rule 25 provides that "[p]roceedings to enforce, confirm, modify or vacate an

Award will be controlled by and conducted in conformity with the Federal Arbitration Act

. . . or applicable state law."  It also states that "Parties to an Arbitration under these

Rules shall be deemed to have consented that judgment upon the Award may be

entered in a court having jurisdiction" over the parties.  Id.

Based on the language in the Settlement Agreement and the JAMS procedural

rules, both parties contemplated the finality of the arbitration order and award and

viewed it as an alternative legal resolution to litigation.  Debtor and his co-defendants

sought modification of the award, and when the arbitrator declined to alter it they did not

appeal the matter further.  Moreover, Debtor does not challenge the Corrected Final

---

[4] In accordance with JAMS procedural rules, both parties had seven days to request "correction or modification" to the Final Order and Award, dated September 22, 2017, limited to "computational, typographical or other similar error . . . including the reallocation of fees."  Doc. 28-2, ¶¶ 43, 45 (citing JAMS Rule 24(j)).  Rival Holdings, Chad Johnson and Todd Johnson requested the arbitrator modify his determination of costs awarded to the parties.  The arbitrator declined to do so; he did, however, make one typographical correction.

Order and Award's validity or finality in this adversary proceeding. Significantly, it is apparent from the arbitration proceedings that the Corrected Final Order and Award was the last step in the arbitration process. Accordingly, the Court finds that the JAMS Corrected Final Order and Award is a valid and final judgment on Portal Investments' claims for fraudulent nondisclosure and breach of fiduciary duty. Portal Investments met its burden of proving the fourth element of collateral estoppel**.**

In summary, the issues actually litigated between the parties and necessarily adjudicated to final judgment in the arbitration are the same as the factual issues raised in Portal Investments' section 523(a)(2)(A) cause of action. Further, there is abundant evidence that Debtor was allowed a full and fair opportunity to be heard and defend himself in the arbitration. Both parties were represented by counsel throughout the arbitration. The liability phase of the arbitration included discovery, multiple hearings spanning several days of argument and evidence and the submission of post-hearing briefs. Doc. 28-3, ¶ 4. Both parties examined and cross-examined witnesses. The arbitration orders show the arbitrator (a retired Colorado state court judge) fully considered both parties' arguments. Furthermore, Debtor has not alleged that he was deprived a full and fair opportunity to be heard on any issues in the arbitration.

For these reasons, the Court concludes that Debtor is collaterally estopped from relitigating the issues decided in JAMS Arbitration Case Numbers 16372 and 17751 in defending against Portal Investments' section 523(a)(2)(A) cause of action.

### C.    11 U.S.C. § 523(a)(2)(A) Cause of Action

To succeed on its section 523(a)(2)(A) claim, Portal Investments must prove each of the following elements by a preponderance of the evidence: (1) Debtor made a representation, (2) with knowledge of its falsity, (3) deliberately for the purpose of

deceiving Portal Investments, (4) who justifiably relied on the representation, which (5) proximately caused Portal Investments damage.  See In re Juve, 761 F.3d at 851 (citing In re Treadwell, 637 F.3d at 860); In re Irons, 2017 WL 943897, at *2.

### 1.    Debtor failed to disclose a material fact, which constitutes an actionable false representation.

Withholding information that the debtor knows to be material is a form of false representation under section 523(a)(2)(A).  In re Juve, 761 F.3d at 851; In re Stark, 408 B.R. at 837 (citing Caspers v. Van Horne (In re Van Horne), 823 F.2d 1285, 1288 (8th Cir. 1987) (abrogated on other grounds)); Se. Neb. Coop. Corp. v. Schnuelle (In re Schnuelle), 441 B.R. 616, 621-22 n.3 (B.A.P. 8th Cir. 2011).    Similarly, false representation "denotes not only written or spoken words but also any other conduct that amounts to an assertion not in accordance with the truth."  Am. Nat'l Bank v. Lewis (In re Lewis), 2017 WL 2274946, at *3 (Bankr. S.D. Iowa May 24, 2017) (quoting United States v. Hampton (In re Hampton), 396 B.R. 28, 30 (Bankr. N.D. Iowa 2008)).

In his ruling, the arbitrator found that Debtor deliberately withheld information he received during the February 6, 2014, telephone call from the Canadian Competition Bureau concerning Schlumberger's interest in acquiring Grimes Sales & Service.  Doc. 28-3, ¶ 33.d.  In addition, the arbitrator found that Schlumberger's interest in acquiring Grimes Sales & Service, and with it the ability to control distribution of HG pumping units, was material information.  He reasoned that Portal Service's board of directors and shareholders (including Portal Investments) would certainly consider information about the company's most lucrative product important in deciding how to proceed in settlement negotiations with Debtor.  Id. at ¶ 46.

15

The arbitrator also found Debtor knew this information was material.  Doc. 28-3, ¶ 33.c.  The arbitrator did not find credible Debtor's assertion at the Phase I hearings that Debtor "thought nothing of" the calls from the Canadian Competition Bureau, in effect considering information about the impending acquisition of Grimes Sales & Service inconsequential in his assessment of his family's ongoing dispute with Portal Investments.  Id.  The arbitrator observed that it was highly unusual that Debtor did not discuss the call with either of his sons or his attorney, given the frequency with which Debtor spoke to his sons about business matters and the centrality of the settlement negotiations at the time.   Indeed, the arbitrator found withholding the information "required a great deal of discipline and determination on [Debtor's] part."  Doc. 28-4, ¶ 31.  He considered these circumstances proof that Debtor knew the importance of this information to the Johnson family's position and that withholding it was in his best interest and in the best interest of his sons.[5]  The arbitrator's findings are sufficient to satisfy the first and second elements of section 523(a)(2)(A).

### 2.   Debtor intended to deceive Portal Investments.

To satisfy the third element of section 523(a)(2)(A), Portal Investments must prove Debtor "acted with the subjective intent to deceive [them]."  Phillips 66 Co. v. Miltenberger (In re Miltenberger), 531 B.R. 228, 235 (Bankr. W.D. Mo. 2015) (quotation omitted).

---

[5] Chad and Todd Johnson were also defendants in the underlying arbitration. Portal Investments asserted claims of fraudulent nondisclosure, breach of fiduciary duty and civil conspiracy against Todd Johnson, and aiding and abetting breach of fiduciary duty and civil conspiracy against Chad Johnson.  The brothers' ignorance of the Schlumberger-Grimes acquisition ultimately insulated them from liability for any of the claims.

16

Subjective intent is often based on circumstantial evidence because a debtor rarely admits to fraudulent intent. See, e.g., In re Treadwell, 637 F.3d 855, 863 (8th Cir. 2011) (imputed fraud determination turned on "disputed facts, credibility determinations, and the inferences a fact finder may choose to draw therefrom."). To find fraudulent intent based on circumstantial evidence, the court considers whether "the totality of the circumstances 'presents a picture of deceptive conduct by the debtor which indicates intent to deceive the creditor.'" In re Davis, 246 B.R. 646, 652 (10th Cir. BAP 2000), aff'd in part, vacated in part on other grounds (citations omitted).

Id.; see also In re Stark, 408 B.R. at 837.

Although Debtor denied fraudulent intent, the arbitrator concluded there was sufficient circumstantial evidence to prove Debtor's subjective intent to deceive. Doc. 28-3, ¶ 48. The arbitrator found Debtor intended to induce Portal Investments into entering the Settlement Agreement without Portal Investments' knowledge of the impending Schlumberger-Grimes acquisition. Id. at ¶¶ 33.d, 48. He also found that Portal Investments would not have entered into the Settlement Agreement had it known the information. Id. at ¶ 48.

In addition, the arbitrator discussed at length facts that presented a picture of deceptive conduct indicating Debtor's intent to deceive Portal Investments. The arbitrator expressed serious concerns about the credibility of all the Johnsons based on discrepancies in their trial testimony. He appeared particularly unimpressed with some of Debtor's statements. The arbitrator concluded that Debtor acted contrary to his normal habits in deliberately keeping critical information from his sons and attorney because he knew it would disrupt the settlement negotiations by introducing a new and material fact. Until February 6, 2014, Debtor was operating under the assumption—expressly stated by Grimes at the parties' January 30 meeting about the distribution agreement—that as long as Grimes was at the helm of Grimes Sales & Service, Portal

17

Service would be able to buy pumps from the company, and thus continue its HG pumping unit business.  The arbitrator concluded that someone with this knowledge would immediately understand the significance of the Canadian Competition Bureau's call, and would know that concealing such information was detrimental to Portal Investments' negotiation posture.  Therefore, he concluded Debtor had both the fiduciary duty[6] to disclose the information and the personal financial and familial interest to withhold it, making his behavior all the more deceptive.  Considering the totality of the circumstances as outlined by the arbitrator, Portal Investments met its burden of showing that Debtor acted deliberately with the intent to deceive, satisfying the third element of section 523(a)(2)(A).

### 3. Portal Investments justifiably relied on the representation.

To meet the burden of showing justifiable reliance under section 523(a)(2)(A), a creditor may rely on a representation of fact even though he might have discovered the falsity of the representation if he had investigated the matter.  Islamov v. Ungar (In re Ungar), 633 F.3d 675, 679 (8th Cir. 2011) (citing Field v. Mans, 516 U.S. 59, 70 (1995)).  However, creditors may not "turn a blind eye where a patent falsity could be determined by a cursory examination or investigation."  Id. (quoting Field, 516 U.S. at 71) (internal quotations and citations omitted).  The question of whether reliance is justifiable is subjective and dependent upon the qualities and characteristics of the particular creditor, and the circumstances of the particular case.  Id.

---

[6] The arbitrator concluded that as a director of the corporation, Debtor owed a fiduciary duty to Portal Service under Colorado law.  Doc. 28-3, ¶¶ 40-45.  For reasons discussed below, the Court finds it unnecessary to decide whether this finding is sufficient to show fraud while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4).

In the JAM proceedings, the arbitrator concluded that Portal Investments'
reliance was justified.  Doc. 28-3, ¶ 49.  Specifically, he found that Portal Investments
was justified in relying on Debtor's duty to act consistently with his fiduciary duty as a
director of Portal Service.  At the time of the settlement negotiations, Portal Investments
had no knowledge from any other source that Schlumberger was in the process of
acquiring Grimes Sales & Service.  To the contrary, Portal Investments was relying on
Grimes' express statement that "[a]s long as I am here, you will be able to buy pumps
from me."  Id.  Given the business relationship of the parties and the circumstances of
the previous communication with Grimes, Portal Investments had no reason to know
Debtor may be withholding material information regarding the future viability of the HG
pumping unit business, and thus no reason to investigate further.  The arbitrator's
findings of fact satisfy the element of justifiable reliance.

### 4.    Debtor's representation proximately caused damage to Portal Investments.

In Phase I of the arbitration, the arbitrator found that Portal Investments provided
"at least colorable threshold evidence of damages sufficient to allow" the arbitrator to
further explore damages in Phase II of the arbitration.  Doc. 28-3, ¶ 50.  Specifically, the
arbitrator pointed to "undisputed evidence that after close of the Settlement Agreement
[Portal Investments] invested an additional $1.5 million in Portal [Service] in hopes of
stimulating its ongoing business, and without knowledge that its HG Pump distribution
operations were likely in jeopardy due to Schlumberger's pending or perhaps completed
acquisition of Grimes [Sales & Service.]"    Doc. 28-3, ¶ 50.  During Phase II, he
elaborated, finding that "but for [Debtor's] fraud and breach of fiduciary duty, [Portal
Investments] would not have invested the additional $1.5 million into Portal [Service]."

Doc. 28-4, ¶ 18.   Portal Service subsequently lost its HG pumping unit distribution agreement with Grimes Sales & Service, the business failed and Portal Investments lost its $1.5 million investment.   Therefore, the arbitrator found that Portal Investments "suffered consequential damages . . . of $1,500,000 as a direct consequence of [Debtor's] fraudulent non-disclosure and breach of fiduciary duty."  Id. at ¶ 20.   This conclusion satisfies the damages and proximate cause element.

The arbitrator also assessed prejudgment interest on the consequential damages at the rate of eight percent, which is allowed under Colorado's "wrongful withholding" statute.  Id. at ¶ 22 (citing Colo. Rev. Stat. § 5-12-102(1)(b)).   The arbitrator calculated interest on $750,000 from February 18, 2014 (the date of the first investment) and interest on $750,000 from April 4, 2014 (the date of the additional investment), for a total sum of $428,877.05 in prejudgment interest.   Thus, the arbitrator found that Portal Investments suffered actual consequential damages of $1,927,877.05, plus per diem interest accruing from the date of the Interim Order and Award, June 12, 2017.  Id. at ¶ 26.

In addition to consequential damages, the arbitrator awarded Portal Investments $1 million in exemplary damages.  Exemplary damages are allowed under Colorado law in cases of "fraud, malice, or willful and wanton conduct."  Doc. 28-4, ¶ 28 (citing Colo. Rev. Stat. § 13-21-102(1)(a)).   The arbitrator found that Portal Investments' injury was "attended by circumstances of fraud," and that Debtor's conduct was "willful and wanton" within the meaning of Colorado law, rendering a claim for exemplary damages appropriate.  Id. at ¶ 30.

Finally, the arbitrator awarded costs and attorneys' fees during a third phase of the arbitration, as follows: (1) costs in favor of Portal Investments and against Debtor in the sum of $81,612.39; (2) costs in favor of Rival Holdings and against Portal Investments in the sum of $1,305.06; and (3) attorneys' fees in favor of Portal Investments and against Debtor in the sum of $695,588. In addition, the arbitrator reallocated $8,000 in arbitrator expenses in favor of Portal Investments and against the Johnsons and Rival Holdings, jointly and severally. Based on the combined damages, costs and fees, Debtor's total debt to Portal Investments is $3,713,077.44, plus interest.

The arbitrator's findings satisfy the damages element of section 523(a)(2)(A). Accordingly, Portal Investments met its burden of proving Debtor's debt to it is excepted from discharge under section 523(a)(2)(A). Having reached this conclusion, the Court finds it unnecessary to analyze Portal Investments' section 523(a)(4) or (a)(6) causes of action.

### 5. The entire arbitration award is excepted from discharge.

Debtor argues that summary judgment is inappropriate because there are genuine issues of material fact regarding the amount of damages attributable to each cause of action—fraudulent nondisclosure and breach of fiduciary duty—under which the arbitrator found Debtor liable. Debtor argues that if the Court finds his debt to Portal Investments excepted from discharge under only one subsection of section 523(a), it would be impossible to determine what portion of the arbitration award is attributable to the theory of liability that corresponds with that relevant subsection.

As noted above, the Court analyzed Portal Investments' section 523(a)(2)(A) claim only. Section 523(a)(2)(A) bars the discharge of all liability arising from fraud,

including actual damages, punitive damages, attorneys' fees and costs.  <u>Cohen v. de la Cruz</u>, 523 U.S. 213, 223 (1998).  "Once it is established that specific money or property has been obtained by fraud, however, 'any debt' arising therefrom is excepted from discharge."  <u>Id.</u> at 218.  Applying this principle, the Court finds that the arbitrator's entire award, including compensatory and exemplary damages, attorneys' fees and arbitration costs, is the result of Debtor's fraud, and therefore excepted from discharge under section 523(a)(2)(A).  Several reasons support this finding.

First, the arbitrator's findings suggest that the full sum of Portal Investments' $1.5 million loss is causally connected to Debtor's fraudulent nondisclosure.  In his interim order in connection with the liability phase of the arbitration, the arbitrator observed:

> [T]he undisputed evidence that after close of the Settlement Agreement [Portal Investments] invested an additional $1.5 million in Portal [Service] in hopes of stimulating its ongoing business, and without knowledge that its HG Pump distribution operations were likely in jeopardy due to Schlumberger's pending or perhaps completed acquisition of Grimes, provides at least colorable threshold evidence of damages sufficient to allow damages to be explored in a further phase of this arbitration. . . . I find that [Portal Investments] has sufficiently established its claim of fraudulent non-disclosure against [Debtor] to proceed to Phase II of this Arbitration.

Ex. 28-3 at 15.  Although the arbitrator did not calculate total damages during the liability phase of the arbitration proceedings, he found that Debtor's fraudulent nondisclosure served as an independent cause of Portal Investments' loss of its $1.5 million investment, and thus an independent basis for a compensatory damages award.  <u>See</u> Doc. 28-3, ¶¶ 39-51.  Because the fraudulent nondisclosure claim relies on the same controlling or material facts and applicable legal standards as Portal Investments' section 523(a)(2)(A) cause of action, $1.5 million is excepted from discharge.

Second, when considering the arbitrator's interim and Corrected Final Order and Award, it is apparent that both Debtor's fraudulent nondisclosure and breach of fiduciary duty serve as independent bases for the full damages award, rather than each justifying only part of the compensatory damages award as Debtor suggests.  The arbitrator relied on the same findings of fact in determining liability under both fraudulent nondisclosure and breach of fiduciary duty.  Doc. 28-3, ¶¶ 53-54.  Therefore, while the arbitrator combines the two causes of action in his interim order in connection with the damages phase of the arbitration—referring to the consequences of Debtor's "fraudulent non-disclosure and breach of fiduciary duty"—the predicate for liability under both causes of action is the same: Debtor's failure to disclose material information he had a duty under Colorado law to disclose.  Portal Investments' $1.5 million investment loss is causally connected to Debtor's fraudulent nondisclosure <u>and</u> breach of fiduciary duty.  Each claim serves as an independent basis for Portal Investments' loss. Accordingly, the Court deems additional fact-finding on the matter of compensatory damages, and the arbitrator's award of prejudgment interest on those damages, unnecessary.

The arbitrator also awarded Portal Investments $1 million in exemplary damages, which Colorado law allows for cases of "fraud, malice, or willful and wanton conduct." Doc. 28-4, ¶ 28 (citing Colo. Rev. Stat. § 13-21-102(1)(a)).  The arbitrator found that Portal Investments' injury was "attended by circumstances of fraud," that "[Debtor's] fraudulent conduct was 'willful and wanton' within the meaning of Colorado law," and that Debtor's "intentional non-disclosure of material information . . . was deliberate and self-serving."  Finally, he concludes:

23

"[a] party so bent on preventing disclosure of this material information from everyone until well after the settlement deal was closed can clearly be described as engaged in 'conduct purposefully committed which the actor must have realized as . . . done heedlessly and recklessly, without regard to consequences, or of the rights . . . of others, particularly the [Claimant].'"

Id. at ¶¶ 30, 31 (citing Colo. Rev. Stat. § 13-21-102(1)(b)).  Again, the arbitrator speaks collectively of Debtor's "fraud and breach of fiduciary duty" in the context of exemplary damages.  Id. at ¶ 29.  The fact that he does not specifically delineate the exemplary damage award as flowing from one or the other causes of action does not preclude this Court from excepting this debt from discharge without further fact-finding.  This step is not necessary because the arbitrator based the exemplary damage award on the same behavior as the compensatory damage award, i.e., Debtor's failure to disclose material information he had a duty to disclose.   Therefore, both the compensatory and exemplary damages awards "arise from" the debtor's fraudulent nondisclosure, satisfying the requirements of section 523(a)(2)(A).  See de la Cruz, 523 U.S. at 223.

Finally, the arbitrator awarded $695,588 in attorneys' fees, $81,612.39 in costs and $8,000 in reallocated arbitrator expenses[7] to Portal Investments as a prevailing party.[8]  Doc. 28-1.  This award is also "the result of" Debtor's fraudulent conduct, and is excepted from discharge under section 523(a)(2)(A).  See de la Cruz, 523 U.S. at 220.

---

[7] Debtor, Chad Johnson, Todd Johnson and Rival Holdings are jointly and severally liable for the reallocated arbitrator expense.  Doc 28-1, ¶ 42.D.

[8] The arbitrator based his authority to award attorneys' fees and expenses on JAMS Rule 24(g) and the parties' Settlement Agreement, and his authority to award costs on Colorado Revised Statute section 12-22-221(1), as well as the parties' grant of "broad authority and discretion to award such fees if I deem it appropriate."  Doc. 28-1, ¶ 6.  Colorado law generally accords a prevailing party its reasonable costs as a matter of course.  See id. at ¶ 9 (citing Colo. R. Civ. P. 54(d), Colo. Rev. Stat. §§ 13-16-104 and 13-16-105).

## III.    CONCLUSION

The Court finds that Debtor is collaterally estopped from relitigating the issues decided in JAMS Arbitration Case Numbers 16372 and 17751 in defending against Portal Investments' section 523(a)(2)(A) cause of action.  The findings and conclusions in the JAMS Arbitration interim orders and Corrected Final Order and Award satisfy the elements of section 523(a)(2)(A) and the entire arbitration award is excepted from discharge.  Portal Investments' motion for summary judgment is GRANTED.  Douglas L. Johnson's debt to Portal Investments in the sum of $3,713,077.44, plus interest is excepted from discharge under section 523(a)(2)(A) of the Bankruptcy Code.  Because the Court holds the entire debt is excepted from discharge under section 523(a)(2)(A), it is unnecessary to reach the merits of Portal Investments' section 523(a)(4) and 523(a)(6) causes of action.

Dated this 29th day of January, 2018.


Shon Hastings, Judge
United States Bankruptcy Court